**ROYER'S, INC., Plaintiff,**

v.

**UNITED STATES of America,
Defendant.**

Civ. A. No. 15758.

United States District Court
W. D. Pennsylvania.

June 24, 1958.

Wm. W. Scott, Jr. (of Thorp, Reed & Armstrong), Pittsburgh, Pa., for plaintiff.

Hubert I. Tietelbaum, U. S. Atty., and Samuel S. Blaufeld, Asst. U. S. Atty., Pittsburgh, Pa., for defendant.

GOURLEY, Chief Judge.

This is a corporate income tax proceeding which arises out of the termination of a profit sharing trust in which the taxpayer claims a right to recover from the United States of America overpayment of corporate income tax for the fiscal year of 1950, or in the alternative for the fiscal year 1949.

The question for determination is—

Where a taxpayer made contributions to a profit sharing trust under a profit sharing plan for the benefit of the employees in the years 1946, 1947 and 1948 in excess of the amount which it was permitted to deduct under Section 23(p) (1) (C), Internal Revenue Code of 1939, 26

U.S.C.A. § 23(p) (1) (C), may the excess of the amount be carried forward and deducted in the fiscal year 1950 even though the trust was terminated on February 1, 1948, and if the excess payments by the taxpayer cannot be carried forward as a deduction to the fiscal year 1950, may the taxpayer claim the excess in the amount permitted to be deducted as a financial loss for the fiscal year 1949 resulting from the worthlessness of an asset?

The question posed has not been ruled upon by any United States District Court or Circuit Court, and necessarily raises a question of first impression.[1]

The taxpayer is a Pennsylvania corporation and during the fiscal year 1946 executed a profit sharing trust for the benefit of its employees. In accordance with the provisions of said trust, the taxpayer made contributions during the years 1946, 1947 and 1948, and all contributions made by the taxpayer to the trust were paid by the trustee to the employees for whose benefit the plan was created.

Since the trust was terminated on February 1, 1948, the taxpayer's claim against the government is premised on the legal thesis that the excess of the amount which it was permitted to deduct in the years 1946, 1947 and 1948 should either be carried over as a deduction for the year 1950 or, in the alternative, that said amount should be permitted as a deduction for a loss arising from the worthlessness of an asset in the fiscal year 1949.

█ The allowance of a deduction from a gross income becomes a matter of legislative grace. A particular deduction which is claimed will be allowed only if there is a credit provision for it in the law. New Colonial Ice Co., Inc. v. Helvering, 292 U.S. 435, 54 S.Ct. 788, 78 L. Ed. 1348; John Wanamaker Philadelphia v. Com'r of Int. Revenue, 3 Cir., 139 F.2d 644.

It is necessary, therefore, to determine whether there is a provision for the deduction claimed in circumstances such as exist in this case.[2]

1. No authority has been cited by any of the parties, nor has independent exhaustive research on the part of the court disclosed any case which is dispositive of the question.

2. The provisions of law which govern the determination of the problem are found in the Internal Revenue Code of 1939:
Internal Revenue Code of 1939:
"§ 23. Deductions from gross income.
"In computing net income there shall be allowed as deductions:
"(a) (as amended by Sec. 121(a), Revenue Act of 1942, c. 619, 56 Stat. 798) Expenses.
"(1) Trade or business expenses.
"(A) In General. All the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business,
*    *    *    *    *    *    *
"(f) Losses by corporations. In the case of a corporation, losses sustained during the taxable year and not compensated for by insurance or otherwise.
*    *    *    *    *    *    *
"(p) (as amended by Sec. 162(b), Revenue Act of 1942, supra) Contributions of an employer to an employees' trust or annuity plan and compensation under a deferred-payment plan.

"(1) General rule. If contributions are paid by an employer to or under a stock bonus, pension, profit-sharing, or annuity plan, or if compensation is paid or accrued on account of any employee under a plan deferring the receipt of such compensation, such contributions or compensation shall not be deductible under subsection (a) but shall be deductible, if deductible under subsection (a) without regard to this subsection, under this subsection but only to the following extent:
*    *    *    *    *    *    *
"(C) In the taxable year when paid, if the contributions are paid into a stock bonus or profit-sharing trust, and if such taxable year ends within or with a taxable year of the trust with respect to which the trust is exempt under section 165(a), in an amount not in excess of 15 per centum of the compensation otherwise paid or accrued during the taxable year to all employees under the stock bonus or profit-sharing plan. *    *    .* "
26 U.S.C.A. § 23.
Sec. 165 (as amended by Sec. 162(a), Revenue Act of 1942, supra).
"Employees' trusts.
"(a) Exemption from tax. A trust forming part of a stock bonus, pension, or profit-sharing plan of an employer for

Plaintiff admits that Section 29.-23(p)-10 of Treasury Regulation 111, as amended, promulgated under the Internal Revenue Code of 1939 would deny it any relief since the regulation requires that contributions carried over may be deducted in a succeeding taxable year only in the event the trust or plan was in existence in said succeeding year.[3] In this connection, I am guided by the well established rule of law that treasury regulations are presumptively valid and must be sustained unless unreasonable and plainly inconsistent with the revenue statutes. Commissioner of Internal Revenue v. South Texas Lumber Co., 333 U.S. 496, 68 S.Ct. 695, 92 L.Ed. 831; United States v. Birdsall, 233 U.S. 223, 34 S.Ct. 512, 58 L.Ed. 930; United States v. Grimaud, 220 U.S. 506, 31 S.Ct. 480, 55 L.Ed. 563; Palmisano v. United States, D.C., 159 F.Supp. 98.

Plaintiff, however, advances the proposition that said treasury regulation is arbitrary, unreasonable, and not authorized by Congress, and that since said regulation was issued four months after the trust involved in this proceeding had been terminated, the same was retroactive and therefore void.

I am satisfied that the clear and unambiguous language of the statute in no way is at variance with or contradictory to the regulation. It is further my considered judgment that since the regulation merely clarifies what the language of the statute always was intended to convey, it is no more retroactive in its operation than is a judicial determination construing and applying a statute to a case in hand. Manhattan General Equipment Co. v. Commissioner of Internal Revenue, 297 U.S. 129, 56 S. Ct. 397, 80 L.Ed. 528.

Inasmuch as the trust in the instant case was liquidated during the taxable year and on July 31, 1949, there was no trust or plan in existence during the succeeding taxable years which can be said to have participants in those succeeding taxable years.

Accordingly, no compensation could have been otherwise paid or accrued

---

the exclusive benefit of his employees or their beneficiaries shall not be taxable under this supplement and no other provision of this supplement shall apply with respect to such trust or to its beneficiary—* * *". 26 U.S.C.A. § 165.

Rev.Rul. 54–270, 1954–2 Cum.Bull. 97:

Regulations 118, Section 39.23(p)–10: "Contributions of an employer to an employees' profit-sharing or stock bonus trust that meets the requirements of section 165(a); application of section 23 (p) (1) (C).

"If a qualified employees' profit-sharing trust has been liquidated by the employer, no contribution carryover may be allowed as a deduction, for Federal income tax purposes, in any taxable year subsequent to the year in which the trust was liquidated."

3. Section 23(p) (1) (C) of the Internal Revenue Code of 1939 specifically provides that the amounts paid into a profit-sharing plan by an employer shall be deductible only in the taxable year paid and if the taxable year ends within or with a taxable year of the trust with respect to which the trust is exempt under Section 165(a) of the 1939 Code.

Section 29.23(p)–10 of Treasury Regulations 111, promulgated under the Internal Revenue Code of 1939, provides as follows:

Sec. 29.23(p)–10 (as amended by T. D. 5666, 1948–2 Cum.Bull. 34. "Contributions of an Employer to an Employees' Profit-Sharing or Stock Bonus Trust That Meets the Requirements of Section 165(a)—Application of Section 23(p) (1) (C).—If contributions are paid by an employer in a taxable year beginning after December 31, 1941, to a profit-sharing or stock bonus trust for employees and the general conditions and limitations applicable to deductions for such contributions are satisfied (see section 29.23(p)–(1), the contributions are deductible under section 23(p) (1) (C) if the further conditions provided therein are also satisfied. In order to be deductible under section 23(p) (1) (C) the contributions must be paid in a taxable year of the employer which ends with or within a taxable year of the trust for which it is exempt under section 165(a) * * *. In order that contributions carried over may be deducted in a succeeding taxable year of the employer in accordance with the third sentence of section 23(p) (1) (C), the succeeding year must also end with or within a taxable year of the trust for which it is exempt under section 165(a)."

under the plan to persons who qualify as participants in those succeeding taxable years to form the basis for applying the excess within the limitations provided under the Internal Revenue Code to justify a carry-over in the years which followed the termination of the trust. This conclusion is required since the clear and unambiguous provision of the statute and the regulations prevent the carry-over of excess contributions into the taxable year 1950, and the taxpayer's claim cannot be sustained for the refund alleged to have been erroneously assessed and collected for the fiscal year which ended January 31, 1950.

The alternative claim of the taxpayer of applying the unused contributions in excess of the amount permitted under the Internal Revenue Code to the profit sharing trust as a loss in the fiscal year ending January 31, 1949, on the theory that a loss resulted from the worthlessness of an asset is also without legal basis.

Deductions of this nature can be allowed only as provided under Section 23(p) of the Internal Revenue Code, which is the exclusive section under which payments in the nature of those with which we are concerned may be allowed as a deduction.

Since the taxpayer's contributions do not fall within section 23(p) for the reason that the trust had been terminated in the year 1948, as a matter of law, no deduction can be legally sustained for the taxable year ending January 31, 1950. South Chester Tube Co. v. Commissioner, 14 T. C. 1229.

The facts upon which the conclusions herein made are premised have been stipulated and agreed to by the parties and are approved, as follows:

1. Plaintiff at all of the times hereinafter mentioned was, and now is, a corporation duly organized and existing under the laws of the Commonwealth of Pennsylvania, with registered office at 112–114 South Main Street, Greensburg, Westmoreland County, in this District.

2. The plaintiff brings this action against the United States of America to recover income taxes and interest thereon assessed and collected by the defendant from the plaintiff. Plaintiff is a corporation organized and existing under the laws of the Commonwealth of Pennsylvania, and jurisdiction is conferred upon this court by 28 U.S.C.A. § 1346 (a) (1).

3. In keeping its books, plaintiff regularly used the accrual method of accounting and regularly computed its taxable income for Federal Income Tax purposes on the basis of a fiscal year ending on the last day of January.

4. Plaintiff's claim is for the recovery of income taxes in the principal amount of $12,558.71 for the fiscal year ended January 31, 1950; or, in the alternative, in the principal amount of $9,-513.08 for the fiscal year ended January 31, 1949; together with interest thereon.

5. Plaintiff, during its fiscal year ended January 31, 1946, established the "Royer's, Inc. Profit Sharing Plan" which, together with the Trust forming a part thereof, was embodied in an Agreement executed by Royer's, Inc., and the Union Trust Company of Pittsburgh, as Trustee, on December 27, 1945, but effective as of January 31, 1946. Under the terms of the said plan, plaintiff was required to make annual irrevocable contributions, to be used for the exclusive benefit of the employee beneficiaries, equal to 50% of plaintiff's annual net income after the deduction therefrom of all taxes, including Federal Income and Profits Taxes, and 5% of its net worth at the close of plaintiff's preceding taxable year.

6. By letter dated April 10, 1946, the Commissioner of Internal Revenue, hereinafter referred to as the "Commissioner", advised the plaintiff that in his opinion the Royer's, Inc., Profit Sharing Plan, and the Trust forming a part thereof, meet the requirements of Section 165(a) of the Internal Revenue Code of 1939 (26 U.S.C.A. § 165(a)), as amended.

7. With respect to its fiscal years ended January 31, 1946, January 31, 1947 and January 31, 1948, plaintiff, pursuant to the terms of said Plan, paid the following sums to The Union Trust Company of Pittsburgh, as Trustee, as its contributions to the aforesaid Plan for the fiscal years shown:

| Year | Contribution | Date Paid to Trustee | |
|---|---|---|---|
| Jan. 31, 1946 | $ 33,359.81 | Jan. 21, 1946 | $10,000.00 |
| | | Mar. 26, 1946 | 17,201.06 |
| | | Mar. 28, 1946 | 6,155.43 |
| | | Apr. 15, 1946 | 3.32 |
| | | | $33,359.81 |
| Jan. 31, 1947 | 72,697.85 | Mar. 29, 1947 | |
| Jan. 31, 1948 | 50,204.55 | Mar. 23, 1948 | |
| | $156,262.21 | | |

8. In computing the net Federal Income Tax liabilities paid by plaintiff for the fiscal years shown below, plaintiff has been permitted to deduct, under Section 23(p) of the Internal Revenue Code of 1939 (26 U.S.C.A. § 23(p)), as amended, the amounts shown below on account of the contributions referred to in Paragraph 7 hereof:

| Fiscal Year Ended | Contribution | Deduction | Contribution Carry-over | Total Contribution Carry-over |
|---|---|---|---|---|
| Jan. 31, 1946 | $ 33,359.81 | $ 20,087.07 | $13,272.64 | $13,272.64 |
| Jan. 31, 1947 | 72,697.85 | 32,434.81 | 40,263.04 | 53,535.68 |
| Jan. 31, 1948 | 50,204.55 | 34,881.33 | 15,323.22 | 68,858.90 |
| Jan. 31, 1949 | None | 42,823.00 | (42,823.09) | 26,035.81 |
| | $156,262.21 | $130,226.40 | $26,035.81 | $26,035.81 |
| Jan. 31, 1950 | None | None | None | None |

9. Plaintiff's Board of Directors authorized the discontinuance as of February 1, 1948, of the Plan and Trust referred to in Paragraph 5 hereof. By letter dated July 16, 1948, the Commissioner advised plaintiff that the prior status of the Plan and Trust under Section 165(a) of the Internal Revenue Code of 1939 was not adversely affected because of such termination. Actual termination of the Plan and Trust occurred during the months of June and July of 1948, when all contributions theretofore made by plaintiff to the Plan, together with the net earnings thereon, were paid over by the Trustee to the respective participating employees, pursuant to the terms of said Plan. Such distributions were made on June 29, 1948, June 30, 1948 and July 1, 1948. The reason for the termination of the Plan was to substitute a yearly cash bonus in lieu thereof; said bonus to be distributable to employees as soon as possible after the close of each fiscal year. The formula for determining the amount of bonus distributable, the employees eligible to share therein, and their respective proportionate shares of the total bonus distributable, were identical with the comparable provisions of employer contributions, eligible employ-

ees, and participation set forth in the Royer's, Inc., Profit Sharing Plan.

10. Plaintiff's United States Corporation Income Tax Returns for the fiscal years ended January 31, 1949 and January 31, 1950, were prepared on the accrual basis of accounting and were filed on May 16, 1950 and April 14, 1950, respectively, with Stanley Granger, hereinafter referred to as the Collector, who at that time was the Collector of Internal Revenue for the Twenty-third Collection District of Pennsylvania, at Pittsburgh, and who is no longer in such office.

11. Plaintiff paid to said Collector the amount of Federal Income Tax liability shown to be due by its said income tax return for the fiscal year ended January 31, 1949, viz., $62,455.83, in the following amounts and on the following dates:

| | |
|---|---|
| April 21, 1949 & May 20, 1949 | $15,655.83 |
| July 18, 1949 | 15,600.00 |
| October 20, 1949 | 15,600.00 |
| January 25, 1950 | 15,600.00 |
| | $62,455.83 |

12. The Commissioner caused to be refunded to plaintiff with respect to its Federal Income Tax liability referred to in Paragraph 11 hereof, the sum of $13,912.90, which was received on or about January 28, 1954, so that the net Federal Income Tax liability paid by plaintiff for the fiscal year ended January 31, 1949, is $48,542.93. The principal cause of the said refund was the allowance of a deduction of $42,823.09 carried over to the fiscal year ended January 31, 1949, from contributions made to the profit sharing plan and trust referred to in Paragraph 5 hereof with respect to plaintiff's fiscal years ended January 31, 1946, January 31, 1947 and January 31, 1948. In computing the said deduction of $42,823.09 for the fiscal year ending January 31, 1949, the total carry-over of $68,858.90 referred to in Paragraph 8 hereof was allowed as a deduction to the extent of 15% of the non-deferred compensation otherwise paid or accrued by plaintiff during the fiscal year ending January 31, 1949, to those of its employees who were beneficiaries under the Royer's, Inc., Profit Sharing Plan as of February 1, 1948, i. e., 15% of $285,487.28, or $42,823.09.

13. Plaintiff paid to said Collector the amount of Federal Income Tax liability shown to be due by its said income tax return for the fiscal year ended January 31, 1950, viz., $16,999.61, in the following amounts and on the following dates:

| | |
|---|---|
| April 21, 1950 | $ 4,249.90 |
| July 19, 1950 | 4,249.91 |
| October 20, 1950 | 4,249.90 |
| January 15, 1951 | 4,249.90 |
| | $16,999.61 |

14. As a result of the Commissioner's examination of plaintiff's said income tax return for the fiscal year ended January 31, 1950, plaintiff, on January 28, 1954, paid additional Federal Income Tax for such year in the amount of $3,797.81, together with interest thereon in the amount of $819.02, so that the net Federal Income Tax liability paid by plaintiff for the fiscal year ended January 31, 1950, is $20,797.42.

15. During plaintiff's fiscal year ended January 31, 1950, the non-deferred compensation otherwise paid or accrued during such year to plaintiff's employees who were beneficiaries under the Royer's, Inc., Profit Sharing Plan on February 1, 1948, was $176,225.26.

16. The plaintiff and the Commissioner of Internal Revenue entered into agreements under Section 276(b) of the

Internal Revenue Code of 1939, 26 U.S.C.A. § 276(b), extending to June 30, 1954, the time within which an assessment could be made of income taxes for the plaintiff's fiscal years ended January 31, 1949 and January 31, 1950.

17. On June 21, 1954, within the time and manner prescribed by law, the plaintiff duly filed with the District Director of Internal Revenue at Pittsburgh, Pennsylvania, a claim for refund of Federal Income Tax for each of its fiscal years ended January 31, 1949 and January 31, 1950, in the amount of $9,900, or such greater amount as may be legally refundable, with interest thereon, as provided by law.

18. The District Director of Internal Revenue at Pittsburgh, Pennsylvania, by direction of the Commissioner, rejected the claims for refund set forth in Paragraph 17 hereof and on May 17, 1955, gave notice of such rejection to plaintiff by registered mail.

An appropriate order is entered.